**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **RONALD JAMES LINEBERRY** | ) | |
| **TAMMY AKERS LINEBERRY,** | ) | **CASE NO. 06-70093** |
| | ) | |
| **Debtors.** | ) | **CHAPTER 7** |

**MEMORANDUM DECISION**

The matter before the Court is the Debtors' Application for Waiver of the Chapter 7 Filing Fee pursuant to 28 U.S.C. § 1930(f). This matter was heard on April 5, 2006. At that time, the Court raised a question with Debtors' counsel as to whether it should compare the Debtors' gross monthly income as reported on Line 3 of Schedule I **or** the Debtors' total combined monthly income as reported on Line 16 of Schedule I **with** the poverty guideline income published by the United States Department of Health and Human Services applicable to a family of the size involved. After due consideration of the facts and circumstances of this case, including the Debtors' financial condition and the applicable law, the Court concludes that it should use the net income figure from Line 16 of Schedule I, but that for the reasons noted below the Application should be denied.

FINDINGS OF FACT

The Debtors filed a joint Chapter 7 petition on February 9, 2006. At that time, the Debtors also filed their completed schedules. The schedules reported that the Debtors owned real estate valued at $83,200.00, which is subject to a mortgage totaling $112,000.00. The Statement of Intention filed on February 24, 2006 indicated the Debtors' plan to surrender this property to the mortgage company[1] and to assume a residential lease. Additionally, the Debtors reported that they owned two burial plots valued at $884.00, which are not subject to any claims nor claimed as exempt by the Debtors. The Debtors reported personal property totaling $8,703.46, all of which was claimed as exempt except for $25.00 of cash on hand and $50.00 in Mrs. Lineberry's checking account at Grayson National Bank. The Debtors' personal property included two automobiles - a 1975 Ford F350 truck valued at $1,000.00 and a 1998 Ford Taurus valued at $1,800.00.

On Schedule I, the Debtors listed two dependents - a fourteen year old son and an eleven year old son - and reported a total gross monthly income of $2,875.42, less payroll deductions of $773.58 for a total net monthly income of $2,101.83. Food stamps received by Mrs. Lineberry in the amount of $240.00 per month were added to the Debtors' net monthly income to arrive at a total combined monthly income of $2,341.83. Each Debtor filed a Schedule J listing their individual monthly expenses. Mr. Lineberry reported total monthly expenses of $1,225.00 and Ms. Lineberry reported total monthly expenses of $1,624.00. The itemization of the reported monthly expenses is as follows:

| Monthly Expense | Mr. Lineberry's Sch. J | Mrs. Lineberry's Sch. J |
|---|---|---|
| Rent/Mortgage | $300.00 | $400.00 |

---

[1] A consent order granting the mortgage company relief from the automatic stay was entered on March 30, 2006.

| | | |
|---|---|---|
| Electricity and Heating Fuel | | $150.00 |
| Telephone | $ 60.00 | $ 40.00 |
| Home Maintenance | | $ 25.00 |
| Food | $200.00 | $400.00 |
| Clothing | | $ 75.00 |
| Laundry and Dry Cleaning | | $ 20.00 |
| Medical and Dental Expenses | | $ 50.00 |
| Transportation | $100.00 | $150.00 |
| Recreation | $ 25.00 | $ 25.00 |
| Charitable Contributions | | $144.00 |
| Auto Insurance | $ 40.00 | $ 45.00 |
| School and Sports Fees | | $100.00 |
| Child Support | $500.00 | |
| **Total Monthly Expenses** | **$1,225.00** | **$1,624.00** |

On March 6, 2006, the Debtors filed their Application for Waiver of the Chapter 7 Filing Fee. The Debtors' Application reports a family of four, total monthly gross income of $3,115.41 and total monthly expenses of $2,849.00. Attached to the Application is an affidavit signed by the Debtors stating that in the fall of 2005 the Debtors separated and currently maintain separate households.[2] Consequently, the male debtor is paying the female debtor $500 per month in child support and the female debtor is receiving food stamps for herself and the Debtors' children. Mr. Lineberry lists the $500 monthly child support as a monthly expense on his individual Schedule J. Mrs. Lineberry reports receiving $240 per month in food stamps on Schedule I, but does not list as income the $500 monthly child support on Line 10 of Schedule I.

---

[2] According to the Debtors' petition, Mr. Lineberry is living in Grayson County and Mrs. Lineberry and the Debtors' two children are living in Carroll County.

The 2006 poverty guideline for a family of four is $1,666.67 per month.[3] Accordingly, 150% of the poverty guideline is $2,500.00 per month.

At the April 5, 2006 hearing, the Court asked the Debtors' counsel to explain reporting child support as a monthly expense to Mr. Lineberry, but not reporting the child support as income to Mrs. Lineberry. Debtors' counsel stated that it was unclear how to handle the situation presented in this case where the Debtors were living separately but filing a joint petition. She argued that because of the expenses required to maintain separate households, the Debtors do not have money left at the end of each month to pay the filing fee in whole or in installments. The Court took the Debtors' Application under advisement. Subsequently, the Chapter 7 Trustee has designated this case as a no asset case.

On April 12, 2006, the Court determined that additional information was needed concerning various expenses of the Debtors. On the same date, the Court entered an order directing the Debtors to file an affidavit addressing charitable contributions made by Mrs. Lineberry, school and sports fees paid by Mrs. Lineberry and the Debtors federal and state tax refunds for the year 2005.

Per the affidavit filed by Mrs. Lineberry on April 26, 2006, she has made the following charitable contributions to her church: "$147 in January 2006; $154 in February 2006; $150 in March 2006 and $194 in April 2006." Each of these monthly contributions is more than the $144.00 per month that Mrs. Lineberry listed on her Schedule J. In response to the Court's inquiry regarding the $100.00 per month for school and sports fees that Mrs. Lineberry listed on her Schedule J, Mrs. Lineberry reports:

> 2. I have spent the following for my sons: in January 2006, $31 for sports;

---

[3] Annual Update of the HHS Poverty Guidelines, 71 Fed. Reg. 3,848 (Jan. 24, 2006).

>   in February 2006, nothing specific; in March 2006, $28 for school expenses
>   and a $50 deposit for Jamie's ring.
>   3.   I anticipate needing to pay for: In April and May 2006, $45 for school
>   expenses, $80 for school pictures and $439 for Jamie's ring; $175 for
>   summer sports; and in the fall, $115 for school fees and $140 or so for
>   school supplies.

(Mrs. Lineberry Aff. Apr. 26, 2006.)  Lastly, Mrs. Lineberry advised the Court that the Debtors received a total of $3,400 in federal and state tax refunds for 2005, which the Debtors divided equally.  Mrs. Lineberry spent her half of the refund "on heating oil, personal property taxes, a county sticker for [her] car, some small bills from December and January, clothes for [her] sons and underwear for [herself]." (Mrs. Lineberry Aff. Apr. 26, 2006.)   The Court notes that the Debtors did not list this tax refund as an asset on Schedule B or claim it as exempt on Schedule C.  While this could be possible if the Debtors received and spent their 2005 tax refund before filing bankruptcy in February 2006,  the Debtors' Statement of Financial Affairs does not show the refund was used to pay any bills.  If the Debtors received their 2005 tax refund after filing bankruptcy, the tax refund was property of the bankruptcy estate and has been spent by the Debtors improperly.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  A request to waive a filing fee is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2) in that a request made to a bankruptcy court to waive a filing fee due under the statute to the Clerk of that court is inherently a matter involved with the administration of the case, if not the administration of the estate.

28 U.S.C. § 1930(f) permits the bankruptcy court to waive the filing fee in an

individual debtor's Chapter 7 case filed after October 17, 2005. *See* H.R. Rep. No. 31, 109th Cong., 1st Sess. 418 (2005). Because this case was filed on February 9, 2006, § 1930(f) applies; it reads as follows:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments.

28 U.S.C. § 1930(f)(1). On August 11, 2005, the Judicial Conference of the United States promulgated interim procedures to assist courts in implementing the fee waiver provision. *See Judicial Conference of the United States Interim Procedures Regarding the Chapter 7 Fee Waiver Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,* Aug. 11, 2005, http://www.uscourts.gov/bankruptcycourts/jcusguidelines.html [hereinafter *Interim Procedures*]. These procedures provide:

> 3. The income for comparison to the poverty guidelines is the "Total Combined Monthly Income" as reported . . . on Line 16 of Schedule I. Non-cash governmental assistance (such as food stamps or housing subsidies) is not included. The income of a spouse is included whether or not a joint petition is filed, **unless the spouses are separated and a joint petition is not filed**. The income of any other family member listed on Schedule I as a dependent also is included.
>
> 4. "Family size" is defined as the debtor(s), the debtor's spouse **(unless the spouses are separated and a joint petition is not being filed)**, and any dependents listed on Schedule I.

*Interim Procedures, supra,* at II.A (emphasis added). In this case, the Debtors were separated at the time of filing bankruptcy, but chose to file a joint Chapter 7 bankruptcy petition and reported their total combined monthly income as $2,341.83, which includes $240.00 per month in food

stamps received by Mrs. Lineberry, but not the $500.00 monthly child support received by Mrs. Lineberry.  However, Mr. Lineberry listed the monthly child support paid to Mrs. Lineberry on Schedule J as a monthly expense.

The Court concludes that the child support should not have been listed on Line 10 of Schedule I as income to Mrs. Lineberry and should not have been listed on Line 14 of Schedule J as a monthly expense of Mr. Lineberry.  Although the Debtors were separated when they filed bankruptcy, they chose to file a joint Chapter 7 petition.  As such, the Court is to consider the combined income and expenses of the Debtors.  Listing the child support as income to Mrs. Lineberry on Schedule I overstates the Debtors' total combined monthly income by $500.  Likewise, listing the child support as a monthly expense of Mr. Lineberry overstates the Debtors' total combined monthly expenses by $500.  According to Mrs. Lineberry's Schedule J, her monthly expenses exceed her monthly income by $401.90.  Presumably, Mrs. Lineberry is using the $500 per month in child support to make ends meet.  On his Schedule J, Mr. Lineberry reports that his monthly expenses exceed his monthly income by $105.27.  This figure is based on categorizing the monthly child support paid to Mrs. Lineberry as an individual expense of Mr. Lineberry.  While this may be the proper categorization for child support paid to a former spouse, or who is not a joint debtor on the payor spouse's bankruptcy petition, the Court concludes that child support paid to a party, who is a joint debtor on the payor spouse's bankruptcy petition, should not be listed as a monthly expense of the payor spouse or as monthly income of the payee spouse.  Accordingly, the Debtors' total combined monthly income as reported on Line 16 of Schedule I is $2,341.83, Mr. Lineberry's total monthly expenses total $775.00, and the Debtors' combined monthly expenses total $2,349.00.   Further, the Debtors' total monthly expenses exceed their total combined monthly income by $7.17.

Pursuant to the Interim Procedures, the Court is to compare the Debtors' total combined monthly income as reported on Line 16 of Schedule I less any amounts received in non-cash government assistance, such as food stamps, to 150% of the poverty guidelines published by the United States Department of Health and Human Services applicable to a family of the size involved. Subtracting the $240.00 per month in food stamps Mrs. Lineberry receives from the Debtors' total monthly income of $2,341.83 results in a total monthly income of $2,101.83, which is to be compared to 150% of the applicable poverty guideline.

The Debtors' jointly filed Schedule I lists two dependents - a fourteen year old son and an eleven year old son. For purposes of 28 U.S.C. § 1930(f), the Court concludes that the Debtors have a family of four. To have two separate households for purposes of this analysis, Mr. and Mrs. Lineberry would have to be separated and have filed separate bankruptcy petitions. By filing a joint petition, both Debtors are counted as part of the same family as well as the dependents listed on Schedule I. One hundred fifty percent of the 2006 poverty guideline for a family of four is $2,500. The Debtors' adjusted total monthly income of $2,101.83 is less than 150% of the applicable poverty guideline; thus the Debtors have satisfied the first prong of the two part test for a waiver of the filing fee pursuant to 28 U.S.C. § 1930(f).

The second prong of that two part test requires a determination of whether the Debtors are unable to pay the filing fee in installments. In *In re Nuttall*, 334 B.R. 921, 923 (Bankr. W.D. Mo. 2005), the court stated "a court must naturally look first to the debtor's expenses to determine whether the debtor has the ability to pay the fee out of his income." The *Nuttall* court evaluated the reasonableness of the debtor's scheduled expenses by comparing such

expenses to Internal Revenue Service ("IRS") guidelines[4] that "establish a standard as to expenses which have been accepted by Congress elsewhere as a starting point in determining reasonableness." *Id.* at 924.

The IRS National Standard for Allowable Living Expenses, which includes food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous expenses, for a family of four with a total gross monthly income of $2,875.42[5], is $990.00. The Debtors' food, clothing, laundry and dry cleaning, recreation, medical and dental expenses, charitable contributions and school and sports fees total $1,039.00, which is $49 above the national standard.

The IRS Local Transportation Expense Standard for the south census region, which includes Virginia, for two cars, excluding property taxes, is $336, and the National Standard for ownership costs for one car is $475 and $338 for a second car. The Debtors own two vehicles - a 1975 Ford F350 valued at $1,000.00 and a 1998 Ford Taurus valued at $1,800.00. The Debtors do not owe anything on the two vehicles and report monthly expenses for transportation and auto insurance totaling $335, which is just below the regional standard.

As a result of their separation, the Debtors are maintaining separate households. Mr. Lineberry is living in Grayson County, Virginia and reports rent and telephone expenses totaling $360 per month. The applicable IRS Local Housing and Utilities Standard is $642 per month; thus Mr. Lineberry's expenses are well below the local standard. Mrs. Lineberry and the Debtors' two children are living in an apartment in Carroll County, Virginia. Mrs. Lineberry's

---

[4] The IRS guidelines are available on the U.S. Trustee Program website, http://www.usdoj.gov/ust, under the Means Testing Information link.

[5] The Debtors' total gross monthly income was calculated by adding each Debtor's income as reported on Line 3 of Schedule I.

rent, electricity and heating fuel, telephone, and home maintenance expenses total $615 per month.  The applicable IRS Local Housing and Utilities Standard is $797 per month, which indicates that Mrs. Lineberry's expenses are below the local standard. Despite the fact that both Debtors living separately are under the local standard, the Debtors' housing and utilities expenses are greater than they would be if they lived together in the same household.  The Local Housing and Utilities Standard for a family of four is $916 per month for Carroll County, Virginia and $868 per month for Grayson County, Virginia.  The Debtors separate housing and utilities expenses total $975 per month.  Consequently, by living separately and maintaining separate households, the Debtors' expenses exceed the local standard for both Carroll County by $59 per month and Grayson County by $107 per month.

The interim procedures provide that the bankruptcy court "should consider the totality of the circumstances in determining whether the debtor is unable to pay the fee in installments. . . ." *Interim Procedures, supra,* at II.A.5. Moreover, "the debtor has the burden of showing that the application should be granted." *Interim Procedures, supra,* at II.A.6.   The Debtors received federal and state tax refunds for 2005 totaling $3,400.00.  Upon receipt of their 2005 tax refunds, the Debtors had the financial resources available to pay the filing fee if they had chosen to put the money necessary aside for that purpose.  While Mrs. Lineberry provided an explanation of how she spent her half of the refund,  no evidence has been presented with respect to how Mr. Lineberry spent his portion of such refund.  Accordingly, the Court concludes that the Debtors have failed to meet their burden of showing that they do not have the financial means to pay the filing fee.

According to Mrs. Lineberry's April 26, 2006 affidavit, the she plans to purchase a $489.00 school ring for their fourteen year old son. If the Debtors can afford such a purchase,

instead of either placing the responsibility on their son to earn the money for this purpose or simply telling him that they cannot afford it, the Debtors can arrange their financial affairs to pay the filing fee so as to enable them to obtain a discharge of the debts they have incurred. In the Court's view buying a school ring for a child should have a lower priority than paying the normal charge assessed by the government to obtain bankruptcy relief. Based on the totality of the circumstances, the Court concludes that the Debtors have the ability to pay the filing fee in installments. Accordingly, an order denying the Debtors' Application will be entered contemporaneously with the signing of this decision.

This 1st day of May, 2006.

_____
UNITED STATES BANKRUPTCY JUDGE